UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELIZABETH R. EKEBLAD, )
    Plaintiff, )
)
v. )
)
WILLIAM R. PIROLLI, Trustee of The )   No. 1:20-cv-332-JJM-LDA
Russell A. Ekeblad Trust and The )
Russell A. and Sheila R. Ekeblad )
Insurance Trust- 1988 and DISANTO, )
PRIEST & CO., )
    Defendants. )
)

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Before the Court are Defendants William R. Pirolli and DiSanto, Priest & Co.'s ("Trustee") five motions: Motion for Judicial Trust Reformation, ECF No. 31; Motion for Reconsideration to Access Portsmouth House and Property, ECF No. 32; Motion to Compel Supplemental Report, ECF No. 36; Motion to Supplement Record with Settlor's Holdback Letter, ECF No. 43; and Emergency Motion for Order Permitting Trustee to take IRA Distribution, ECF No. 44. Defendants assert that the original purpose of the Trusts have been frustrated and that the interests of one of the beneficiaries, the plaintiff, Ms. Elizabeth R. Ekeblad, would be better served if the trusts were reformed to effectuate the intent of the Settlors (Ms. Ekeblad's parents). Defendants also assert that the real property located at 115 Seaconnet Boulevard in Portsmouth, Rhode Island ("Property") should be sold, and the proceeds placed in

1

trust. ECF No 31. Ms. Ekeblad counters that Defendants are bound by a fiduciary duty and a duty of loyalty that prevents the trust from being reformed, and that she has a greater interest in having a place to live. ECF No. 37.

## I. BACKGROUND

In 1981, Russell A. Ekeblad, the father of Elizabeth R. Ekeblad, established The Russell A. Ekeblad Trust. *See* ECF No. 31-1 at 14–28. In 2016, he executed the "Fourth Amendment by the Entirety and Restatement of the Russell A. Ekeblad Trust" ("RAE Trust"). *Id.* at 28. There were four beneficiaries of this Trust: Russell's former wife, Sheila; Russell's daughter, Elizabeth; Russell's sister, Louise Wilcox; and Sheila's children from a prior marriage, Rachel and Eric Soloff. *Id.* at 15–16. The Trust contained two types of assets: real and personal property. *See id.* at 15. The Property was left to Ms. Ekeblad upon the death of her father. *Id.* at 15. According to the RAE Trust, the Trustee was to distribute 60 percent of Trust assets to Sheila if she was alive at the time of Mr. Ekeblad's passing, 20 percent to his sister, and 10 percent to each of his two stepchildren. *Id.* at 15. Mr. William Pirolli, an accountant with DiSanto & Priest ("the Trustee") was the designated trustee. *Id.* at 25.

Russell & Shelia Ekeblad established a second trust[1] – "The Russell A. and Sheila R. Ekeblad Irrevocable Insurance Trust – 1988" ("Insurance Trust") – and placed the proceeds of Mr. and Mrs. Ekeblad's life insurance policies into it for distribution to their children upon their death. Like the RAE Trust, the Insurance Trust sets forth the distribution of the trust's income and principal to their children

---

[1] Collectively, the two trusts are referred to here as the "Trusts."

"as the Trustee may deem advisable for the care, maintenance, support, education or welfare of any of them . . . ." *Id.* at 32. Mr. Pirolli was also designated as Trustee of the Insurance Trust.[2]

Mr. Ekeblad passed away on December 12, 2018. ECF No. 1 at 2. Sheila passed away less than three months later on March 3, 2019. At that time, Sheila's right to the RAE Trust assets was transferred to Ms. Ekeblad. *Id.* at 15–16. Likewise, because both parents were now deceased, the Trustee was to distribute the Insurance Trust in a manner sufficient to support both Sheila's children, Rachel and Eric Soloff, as well as Ms. Ekeblad, the child of Sheila and Russell. *Id.* at 32.

The relationship between Ms. Ekeblad and the Trusts has been difficult, and the administration of the Trusts acrimonious at times. This resulted in an extremely fast and erratic depletion of the Trusts' assets and concern about how long the Trusts' assets would be able to provide support for Ms. Ekeblad. Ms. Ekeblad, not satisfied with the administration of the Trusts, sued the Trustee. The Court attempted numerous mediations that unfortunately were not successful.

The Trustee then filed this motion to reform the Trusts to try to honor the intent of the Settlors by preserving the assets for Ms. Ekeblad's continued support.

---

[2] The original insurance trust holds that Fleet National Bank was to become the trustee upon the death of Sheila and Russell. *See* ECF No. 31-1 at 46. However, more recent documents hold that Mr. Pirolli was the trustee of both trusts. *See* ECF No. 8. Since there is no mention of Fleet National Bank in any proceeding before the Court aside from the original insurance trust, the Court will presume that Mr. Pirolli was the trustee of both trusts for all intents and purposes. *See* ECF No. 16 at 3.

ECF No. 31. Ms. Ekeblad opposes the motion. ECF No. 37. The Trustee filed a reply. ECF No. 38.

## II. CONFLICT OF LAWS

The Court must first determine what law to apply. "The settlor is free to select the governing law regardless of where the trust property may be physically located, whether it consists of real or personal property, and whether the trust was created by will or during the settlor's lifetime." Unif. Trust Code § 107, cmt. However, the Settlor selected the law of two states to govern the two trusts at issue in this matter. Indeed, this matter involves a conflicts of laws issue: the RAE Trust explicitly states that its terms are to be governed by Florida law, ECF 31-1 at 21, while the Insurance Trust states that its terms are to be governed by Rhode Island law, ECF 31-1 at 39. Because the doctrine of trusts is governed by state law, the court must first ascertain which state's law applies before determining the standard of review.

To resolve this conflict, the Court looks to the Uniform Trust Code,[3] which holds that:

> The meaning and effect of the terms of a trust are determined by: (1) the law of the jurisdiction designated in the terms unless the designation of that jurisdiction's law is contrary to a strong public policy of the jurisdiction having the most significant relationship to the matter at issue; or (2) in the absence of a controlling designation in the terms of

---

[3] The Court recognizes that Rhode Island has not yet stated its intention to follow the Uniform Trust Code. However, when resolving a conflict of laws issue, a Court shall look outside the laws of the state, as applying one state's law may prejudice the other state. *See also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) ("Although trust law may offer a 'starting point' for analysis in some situations, it must give way if it is inconsistent with 'the language of the statute, its structure, or its purposes.'").

4

the trust, the law of the jurisdiction having the most significant relationship to the matter at issue.

Unif. Trust Code § 107. This interpretation is also consistent with both states' approach to resolving choice of law conflicts. *See, e.g.*, R.I. Gen. Laws § 6A-4.1-507(e) (holding that the transfer of funds is to be governed by the law with "the most significant relationship to the matter in issue"); Fla. Stat. § 670.507(5) (same). Therefore, the Court will look to the law of the state bearing the most significant relationship to the parties.

In doing so, the Court finds that the state with the most significant relationship to this matter is Rhode Island. The real property is in Rhode Island; Ms. Ekeblad and the Trustee are both residing in Rhode Island; and the proposed new trustee, Washington Trust Company, is based in Rhode Island. The Court finds support for this determination on the basis that the proposed Unitrust would be governed by Rhode Island law. Because the state of Florida does not appear to have connections bearing similar weight, the Court will apply Rhode Island law to this matter.

### III. LEGAL STANDARD

The law of unitrusts in Rhode Island is governed by R.I. Gen. Laws § 18-4-29. This statute holds that,

> pursuant to court *reformation* . . . [the statute] requires the distribution at least annually of an amount equal to a fixed percentage of not less than three percent (3%) nor more than five percent (5%) per year of the net fair market value of the trust's assets (the "Unitrust Amount") valued at least annually . . . .

R.I. Gen. Laws § 18-4-29(a) (emphasis added). "The Unitrust Amount may be determined by reference to the net fair market value of the trust's assets in one year or more than one year." R.I. Gen. Laws § 18-4-29(a)(1).

As already mentioned, the doctrine of trusts is governed by state law. However, Rhode Island law is scant on trust reformation. Even though Rhode Island has not explicitly adopted the Restatement of Trusts, the Rhode Island Supreme Court has cited the Restatement many times in deciding trust issues.[4] Thus, the Court looks to it for guidance where there is no Rhode Island law controlling the matter.

If necessary, "[t]he court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law." Unif. Trust Code § 201(a). Trust reformation, like contract reformation, is an equitable remedy.[5] *See Walden v. Skinner*, 101 U.S. 577, 583 (1879). As a result, a court may exercise its equity powers to reform a trust to conform to the original intentions of the parties. *See id.* A court may do so, even if the terms are unambiguous, if two conditions are met. First, it must be proven by clear and convincing evidence that "that a mistake of fact or law, whether in expression or inducement, affected the

---

[4] *See, e.g., Glassie v. Doucette*, 157 A.3d 1092, 1099 (R.I. 2017); *Garneau v. Garneau*, 9 A.2d 15, 19 (R.I. 1939).

[5] Trusts are governed by the basic principles of contract law. *See* Restatement (Third) of Trusts § 12 cmt. a (2003) ("Where the owner of property receives consideration for making a declaration of trust or a transfer in trust, or for causing a transfer to be made in trust, the rules governing . . . reformation, and the effects . . . mistake . . . are the rules applicable to contracts or transfers for value . . . .").

6

specific terms of the document." Restatement (Third) of Trusts § 62 cmt. b (2003). Second, the reformation sought must conform to the underlying intention of the settlor. *Id.* If either condition is not met, a court may still reform a trust "when an unforeseen exigency arises which may place [the beneficiary] in 'pinching want,' making it necessary for the court to place itself in the position of the settlor and carry out his or her intention as if he had anticipated the changed circumstances." *Dep't of Mental Health & Developmental Disabilities v. Phillips,* 114 Ill. 2d 85, 91 (1986).

A mistake of fact is "[a] mistake about a fact that is material to a transaction; any mistake other than a mistake of law." *Mistake, Black's Law Dictionary* (11th ed. 2019). "Hence, a mistake of fact is any mistake other than a mistake about the legal consequences of some known fact or situation." *State ex rel. Dep't of Hum. Servs. v. W.C.,* 172 P.3d 264, 269 (Or. App. 2007). In other words, "there is a mistake of fact when a person understands the facts to be other than they are." Restatement (Third) of Trusts § 12 cmt. c (2003). A mutual mistake of fact may void a contract "only when the mistake relates to a fact which is of the very essence of the contract, the material element in the minds of both parties, and material in the sense that it is one of the things contracted about." *Wright & Pierce v. Town of Wilmington, Mass.,* 290 F.2d 30, 33 (1st Cir. 1961) (internal quotations omitted) (holding that mistake as to the character of the ground constituted a sufficient mutual mistake to void the contract).[6]

---

[6] As alluded to, another basis for reformation is mistake of law. However, because there is no such mistake in this matter, a legal predicate is not necessary. *Cf. Vieira v. Davol, Inc.,* 392 A.2d 375, 378 (R.I. 1978) (holding that a mistake as to the legal consequences of an assumed state of facts constitutes a mistake of law).

IV.     FINDINGS OF FACT

After a thorough review of the record, and after hearing from the parties, the Court makes the following Findings of Fact based on clear and convincing evidence before it.

1. The intent of the Trusts' Settlors was to provide for the beneficiaries' care, maintenance, support, education, or welfare for their lifetime. *See, e.g.*, ECF No. 43.

2. Ms. Ekeblad has expended at least $4.5 million that she received from the family and trusts over the last five years.

3. The discretionary payments to her have been erratic.

4. At the rate of depletion of the current Trusts' assets, soon there will be no more funds for the care, maintenance, support, education, or welfare of Ms. Ekeblad.

5. The litigation itself is needlessly depleting Trusts' assets.

6. There is no evidence before this Court that the current Trustee has acted in any way other than in a professional, competent manner as a dedicated fiduciary of the Trusts' assets. However, the relationship between the Trustee and Ms. Ekeblad has deteriorated into a hindrance in the effective administration of the Trusts.

7. The Trusts' assets are the last known reliable source of funds for Ms. Ekeblad. She has not been steadily employed and she had no other known source of income at the time the Trustee filed the motion.

## V.   DISCUSSION

Before the Court are five motions by Defendants: (1) Motion for Judicial Trust Reformation, ECF No. 31; (2) Motion for Reconsideration to Access Portsmouth House and Property, ECF No. 32; (3) Motion to Compel Supplemental Report, ECF No. 36; (4) Motion to Supplement Record with Settlor's Holdback Letter, ECF No. 43; and (5) Emergency Motion for Order Permitting Trustee to take IRA Distribution, ECF No. 44. Because the latter three motions are mooted by a resolution of the first, the Court resolves the Motion for Judicial Trust Reformation through a three-step process. First, the Court must ascertain whether the Trusts should be reformed. Second, the Court discusses the method that must be undertaken for doing so. Finally, the Court concludes by determining which assets comprise the Unitrust.

### A. Motion to Reform the Trusts

If the Court is to reform the trusts in this matter, it must do so on the basis that either a mistake of law or a mistake of fact exists.[7] To make this determination, the Court must look to the administration of the two trusts in this matter to determine whether they were governed by their terms and done so in a way that complies with Rhode Island state law.

---

[7] As state law authority, Defendants cite to *Prince v. Lynch*, R.I. Super., No. P.C. 99-5806 (Apr. 20, 2006), which held that, pursuant to Restatement (Third) of Trusts § 66 (2003), a court may modify a distributive provision of a trust due to unanticipated circumstances. However, there is a fundamental difference between trust modification and trust reformation. Trust modification refers to a correction of trust terms, whereas trust reformation involves the rectification of mistakes when the trust was established. This matter involves more than modifying the terms of the trust (e.g., merging the two trusts together, changing asset disbursement, and appointing a new trustee).

9

"A support trust directs the trustee to apply the trust's income and/or principal as is necessary for the support, maintenance, education, and welfare of the beneficiary." *Chenot v. Bordeleau*, 561 A.2d 891, 894 (R.I. 1989) (citing Restatement (Second) Trusts § 154 (1959)). The assets of a support trust are considered the resources of the beneficiaries. *See id.* at 893. Therefore, for the trust to have been administered properly, the funds must be disbursed for the "support, maintenance, education, and welfare" of Elizabeth.[8] However, the Trusts have not been administered as support trusts; both Trusts have been administered as discretionary trusts.[9]

The administration of Trusts' assets on the basis that the Trusts were discretionary as opposed to support trusts constitutes a mistake of fact. It is a mistake as to the underlying character of the Trusts that goes to the fundamental nature of the trusts themselves. Indeed, as the Trusts indicate, the assets should have been available for the remainder of Elizabeth's life, or, in the alternative, should not be depleted in the near future. The fact that they are on the verge of running out indicates that there was a mistake as to how they should have been distributed. Moreover, it constitutes an unforeseen exigency that requires the court to place itself in the settlor's shoes to carry out their intention, as if they had anticipated such a

---

[8] The Court has previously interpreted these Trusts as support trusts. *See, e.g.*, ECF No. 25 (holding that "no assets from any trust shall be disbursed, except for *maintenance* of the real estate, without an order from this Court" (emphasis added)).

[9] *Cf. Chenot v. Bordeleau*, 561 A.2d 891, 894 (R.I. 1989) (holding that a discretionary trust "allows the trustee complete and uncontrolled discretion to make allocations of trust funds if and when it deems appropriate").

situation. *See Dep't of Mental Health & Developmental Disabilities v. Phillips,* 114 Ill. 2d 85, 91 (1986). The Court therefore finds that the Trusts can, and should, be reformed so that the Trusts conform with the Settlors' original intent.

### B. Mode of Reformation

The question then becomes how the Court should reform the Trusts. The Court first looks to the reformed Unitrust proposed by the Trustee ("Unitrust") to determine whether it conforms with the Settlors' intent.

The proposed Unitrust resolves the prior conflicts with the Trustee by limiting the discretion of the new institutional trustee. For example, the RAE Trust states that "the Trustee shall at any time or times pay . . . all or any portion of the net income or principal of the Trust as the Trustee may deem advisable for . . . care, maintenance, support or welfare . . . ." ECF No. 31-1 at 32. In such a scenario, the Trustee retains significant discretion in discerning what constitutes care, maintenance, support, or welfare. On the other hand, the payment from the proposed Unitrust is fulfilled on a nondiscretionary, regular basis. ECF No. 31-1 at 2. Indeed, the new trustee would have no discretion but to provide Ms. Ekeblad with regular, predictable income. The proposed Unitrust therefore achieves one of the primary purposes of reforming the Trusts: it guarantees that Ms. Ekeblad will have a regular, predictable, and steady income for the rest of her life.

Given the large sums of money in the Trusts, and that support trusts are for the care and maintenance of the beneficiaries, the Trusts must have been intended to provide that care and maintenance for an extended period. However, the Trusts'

11

assets are on the verge of depletion. The Unitrust would prevent this by providing Ms. Ekeblad with income on a regularly scheduled basis while preserving the principal so that future payments will be assured. As such, because the Unitrust would ensure that funds are distributed for the remainder of her life, the reformation of payments on a regular basis would be consistent with the Settlors' original intent of supporting Ms. Ekeblad for an extended period.

Therefore, the Court finds reformation of the Trusts into the "Elizabeth R. Ekeblad Trust – 2021" ("ERE Trust") to be the proper resolution to this dispute.

### C. Assets of the Unitrust

#### 1) The Real Property

To reiterate, trusts are governed by principals of contract law.[10] As a result, Courts will look to the terms of the trust first to determine whether there is any ambiguity in those terms. *See* Restatement (Third) of Trusts § 4 (2003); *see also* Restatement Third, Property (Wills and Other Donative Transfers) § 11.3. If there is no ambiguity, the court will adhere and enforce those terms as they are written. *See Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 521 (1st Cir. 1988).

The RAE Trust explicitly states that, "[a]t [Russell Ekeblad's] death the Trustee shall distribute all of the right, title and interest in and to that real property located in Portsmouth, Rhode Island, and commonly designated as 115 Seaconnet Boulevard, Portsmouth, Rhode Island, then held as a part of the Family Trust to ELIZABETH." ECF No. 31-1 at 15. It is not ambiguous as to whether Ms. Ekeblad

---

[10] *See supra* note 5.

12

was entitled to the property: the Trustee was to transfer the "right, title and interest" of the real property to Ms. Ekeblad.  As a result, the Court finds that Ms. Ekeblad is entitled to the Property outright.

Before ordering the transfer of the Property there are two issues that must be addressed.  The first is the argument presented in the Defendants' Motion to Reconsider that Ms. Ekeblad could not support the Property and is therefore not in accordance with the intent of the Settlor.  "It is true that trust law looks to the settlor's intent, but only the settlor's intent *as manifested in the trust instrument* is relevant, unless there is an ambiguity in the instrument." *Frank v. Colt Industries, Inc.*, 910 F.2d 90, 99 (3d Cir. 1990) (emphasis in original) (citing Restatement (Second) of Trusts §4); *see also Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d 486, 489–90 (1st Cir. 1989) (holding that the Court cannot rewrite the instrument because [the words are clear, precise, and definite").  This Court will not look to resolve ambiguity where none exists: The Settlor's intent as manifested in the RAE Trust is the immediate transfer of the Property upon Mr. Ekeblad's death.

The second issue is the mortgage on the Property.  It is a fundamental principal of property law that title or possessory interests in property cannot be transferred when a property is encumbered without creating a liability thicket. *See* Restatement (Third) of Prop.: Mortgages § 5.2 (1997).  The Court should first resolve the

encumbrance. To effectuate the intent of the Settlor,[11] the mortgage should be paid off so that the house transfers to Ms. Ekeblad free and clear of any encumbrances.

Thus, in the Court's equitable jurisdiction, the Court orders the Trusts' assets to be utilized to pay off the mortgage. Immediately upon doing so, the Court orders that the Trustee transfer the Property to Ms. Ekeblad.

*2) All Other Property*

All non-real property contained in the RAE Trust and the Insurance Trust to which Ms. Ekeblad is a beneficiary, after payment of Trusts' administration expenses, shall transfer to the Unitrust.

## VI.   CONCLUSION

The Ekeblads intended to provide economic support for their daughter during her lifetime. The intent of her parents has not been achieved because the assets of the Trusts have been depleted at an alarming and erratic rate. The goal of the reformed ERE Trust is to preserve the assets for the life of Ms. Ekeblad while providing her a monthly, steady income for the remainder of her life. Moreover, it is clear the Ekeblads wanted their daughter to have their family home as a stable place for her to live, requiring the immediate transfer of ownership to her, free and clear of any mortgage.

The Court GRANTS Defendants' Motion for Judicial Trust Reformation (ECF No. 32) and reforms the Trusts and Orders as follows:

---

[11] The Settlor intended both for his daughter to have the family house and that she have a secure, stable place to live.

1. The Trustee shall use Trusts' assets and pay off the mortgage and any other encumbrances on the Property.

2. The Trustee will then transfer the Property at 115 Seaconnet Boulevard, Portsmouth, Rhode Island to Elizabeth R. Ekeblad.

3. The Trustee will then submit a final bill for the Trusts' costs and expenses to the Court for approval of payment.

4. The Trustee will establish the "Elizabeth R. Ekeblad Trust – 2021" at Washington Trust Company in Westerly, Rhode Island consistent with the proposed Unitrust attached to the Motion for Judicial Trust Reformation but with the Court's decision on the transfer of the Property (ECF No. 31-1) (except that the ERE Trust shall make *monthly* payments to Ms. Ekeblad, as opposed to the *quarterly* payments in the proposed draft).

5. The Trustee will liquidate the IRA and transfer the proceeds of such liquidation into the ERE Trust.

6. The Trustee may distribute any assets in the RAE Trust belonging to the beneficiaries other than Ms. Ekeblad.

7. All assets of both Trusts remaining after the payment of the mortgage, Trusts' expenses, and disbursements to the other beneficiaries, shall be transferred to the ERE Trust.

8.   Trustee William Pirolli is removed from the Trusts, conditioned upon Washington Trust Company, or a comparable financial institution, accepting the ERE Trust.[12]

Because of this ruling, the Defendants' Motion for Reconsideration (ECF No. 32), Motion to Compel Supplemental Report (ECF No. 36), and Emergency Motion for Order Permitting Trustee to take IRA distribution (ECF No. 44) are DENIED as moot.

The Court DENIES the Defendants' Motion to Supplement Record with Settlor's Holdback Letter, ECF No. 43.

Finally, the Trustee is hereby released from all liability for his administration of the Trusts.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Chief Judge

December 2, 2021

---

[12] The Court reserves the power to appoint a new trustee should Washington Trust Company reject the trusteeship. *See* R.I. Gen. Laws § 18-2-1 ("If . . . the trustee . . . declines to accept the trust . . . then any person interested under the trust . . . may apply to the superior court and the court may at that time . . . appoint some suitable person or persons to be trustee or trustees, or new trustee or trustees, as the case may be, under the trust.")